UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| REGINALD SPENCER, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:08-CV-00043-LSC |
| | ] | |
| CITY OF EUTAW, ALABAMA, *et al.*, | ] | |
| | ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration Defendants the City of Eutaw, Alabama's, Raymond Steele's, Joe Powell's, Lew Bostic's,[1] Darlene Robinson's, Joe C. Samuel's, and Trudie Cox's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 14), which was filed on March 13, 2008, and Defendants the City of Eutaw, Alabama's, Raymond Steele's, Joe Powell's, Darlene Robinson's, Joe C. Samuel's, and Trudie Cox's Amended Motion to Dismiss Plaintiff's Amended Complaint  (Doc. 29), which was filed on June

---

[1]By agreement of the parties, Plaintiff's claims against Lew Bostic were dismissed; therefore, the motion to dismiss was granted in part with respect to the claims against Bostic.  (Doc. 23.)

19, 2008.[2]   Plaintiff Reginald Spencer ("Spencer") filed suit against Defendants alleging violations of 42 U.S.C. § 1988 ("§ 1988").   Plaintiff asserts claims for termination of his employment without due process of law and interference with Plaintiff's right to employment, breach of his employment contract, negligent breach of contract, fraud, negligent/intentional/reckless fraud, conspiracy, and pattern and practice of intentional or reckless fraud.  (Doc. 13.)  Defendants move to dismiss all claims against them, contending that: the Court lacks jurisdiction to hear the matter; Plaintiff has failed to state a federal claim or cause of action; the Amended Complaint fails to state a claim upon which relief can be granted; Plaintiff failed to strictly comply with Alabama Code § 11-47-23 and § 11-47-192;[3] the Amended Complaint fails to state a claim upon which relief

---

[2]For purposes of this Opinion, the Motion to Dismiss Plaintiff's Amended Complaint (Doc. 14) and the Amended Motion to Dismiss Plaintiff's Amended Complaint (Doc. 29) will be treated as one.

[3]Defendants appear to abandon the argument that Plaintiff failed to strictly comply with Alabama Code § 11-47-23, which requires claims against municipalities to be presented to the clerk for payment within two years from accrual or within six months in the event it is a claim for damages arising out of a tort, and § 11-47-192, which requires the injured party to file a sworn statement with the clerk stating the manner of the injury and the damages claimed before recovery may be made against the city, (Doc. 14) as this argument does not appear in the Amended Motion to Dismiss (Doc. 29). ALA. CODE §§ 11-47-23 & 11-47-192 (1975). With regard to the compliance with Alabama Code § 11-47-

can be granted pursuant to Alabama Code § 11-47-190;[4] Defendants are

entitled to legislative function and qualified immunity; the Amended

Complaint is barred by the statute of limitations and the doctrine of laches;

Plaintiff has failed to join necessary parties;[5] Plaintiff lacks standing;

_____

192, Plaintiff contends that Alabama Code § 11-47-192 was complied with and "a copy of the notice" was filed with the Clerk for the City. (Doc. 25 ¶ 7.) In taking the facts in the light most favorable to Plaintiff, it appears that Plaintiff complied with Alabama Code § 11-47-192. Regardless, the motion to dismiss for failure to comply with these provisions is due to be denied because Defendants failed to elaborate on or provide support for this argument. *See U.S. Steel v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007)(where appellants provided no legal authority to support their argument nor any elaboration upon their argument, the court held that it need not address the "perfunctory and underdeveloped argument"); *Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001)(holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987)(stating that an argument made without citation to authority is insufficient to raise an issue before the court).

[4]Plaintiff argues that the "plea of all defenses, immunities and indemnities as provided by § 11-47-190, et seq., is not well taken and is inapplicable to the Defendants." (Doc. 30 ¶ 2(a).) To the extent that Defendants claim immunities, they are discussed herein. However, since Defendants have failed to elaborate specifically on the immunities and defenses to which they are entitled pursuant to Alabama Code § 11-47-190, the Court deems this argument waived. *See U.S. Steel*, 495 F.3d at 1287 n.13 (where appellants provided no legal authority to support their argument nor any elaboration upon their argument, the court held that it need not address the "perfunctory and underdeveloped argument"); *Flanigan's Enters., Inc.*, 242 F.3d at 987 n.16 (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower*, 826 F.2d at 1576 (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

[5]In response, Plaintiff claims that he has complied with Alabama Code § 11-47-191 by joining all necessary parties in the Amended Complaint. (Doc. 25 ¶ 8.) Under Alabama Code § 11-47-191, when an injured party brings an action against a municipality, he "shall also join such other person or persons or corporation so liable as defendant or

improper service; and various other reasons.[6]  In responding to Defendants'

motion to dismiss,[7] Plaintiff argues that the motion to dismiss should not be

granted because Plaintiff has sufficiently plead pursuant to the notice

_____

defendants of the civil action, and no judgment shall be entered against the city or town unless judgment is entered against such other person or corporation so liable for such injury." ALA. CODE § 11-47-191 (1975).  In taking the facts in the light most favorable to Plaintiff, it appears that all necessary parties have been joined.  Moreover, Defendants failed to provide for support for the allegation that the proper parties were not joined. Therefore, the motion to dismiss is due to be denied as to this issue.

[6]While Defendants argue that Plaintiff's Amended Complaint is due to be dismissed for numerous reasons (Docs. 14 & 29), they do not elaborate on or provide support for the majority of the listed reasons; therefore, the Court deems these defenses waived and will address only the issues discussed by the parties.  *See U.S. Steel*, 495 F.3d at 1287 n.13 (where appellants provided no legal authority to support their argument nor any elaboration upon their argument, the court held that it need not address the "perfunctory and underdeveloped argument"); *Flanigan's Enters., Inc.*, 242 F.3d at 987 n.16 (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower*, 826 F.2d at 1576 (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

[7]While Plaintiff has responded to the motion to dismiss, Plaintiff fails to address many of the issues raised by Defendants as discussed herein.

Page 4 of 60

pleading requirements,[8] the City is not immune from liability,[9] and Defendants are not protected against Plaintiff's claims for intentional and statutory negligence in the termination of Plaintiff.[10]  The issues raised in

---

[8]Plaintiff contends that the motion to dismiss should be denied because the factual allegations of each claim are sufficiently set forth for notice pleading.  (Docs. 25 & 30.)  In the Amended Complaint, Plaintiff makes allegations of fraud, negligent/intentional/ or reckless fraud, and pattern and practice of intentional or reckless fraud.  Under Federal Rule of Civil Procedure 9, "a party must state with particularity the circumstances constituting fraud."  FED. R. CIV. P. 9(b).  However, Defendants have not argued that Plaintiff failed to meet the particularity requirement.  Therefore, the Court will not address whether Plaintiff has plead the allegations of fraud with particularity.

[9]In his response to Defendants' Amended Motion to Dismiss (Doc. 30), Plaintiff contends that the City does not enjoy the protection of general liability, and that the City is not immune from liability for actions taken by members of the City Council.  According to the Alabama Supreme Court, absolute immunity under § 14 of the Alabama Constitution does not extend to municipalities. *Norris v. City of Montgomery*, 821 So. 2d 149, 152 (Ala. 2001).  Thus, to the extent that the City contends that it is entitled to absolute immunity, Alabama Supreme Court law holds otherwise.  To the extent Plaintiff argues that the City is not immune from liability for actions taken by the City Council members, Plaintiff has failed to elaborate on or provide support for this position; therefore, the Court deems this argument waived, except to the extent that it is discussed in Section IV(B)(2)(b).  *See U.S. Steel*, 495 F.3d at 1287 n.13 (where appellants provided no legal authority to support their argument nor any elaboration upon their argument, the court held that it need not address the "perfunctory and underdeveloped argument"); *Flanigan's Enters., Inc.*, 242 F.3d at 987 n.16 (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower*, 826 F.2d at 1576 (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

[10]Plaintiff cites *Norris v. City of Montgomery*, 821 So. 2d 149 (Ala. 2001) as support for his contention.  Plaintiff relies on *Norris* for the proposition that Defendants are not protected against Plaintiff's claims for intentional and statutory negligence in the termination of Plaintiff.  From the Amended Complaint, it does not appear that Plaintiff has made a claim for intentional or statutory negligence.  Moreover, this argument is irrelevant to the motion to dismiss; therefore, the Court need not address it.

Defendants' motion to dismiss have been briefed by the parties and are now ripe for consideration.  Upon full consideration of the legal arguments and evidence presented, the motions to dismiss are due to be denied in part and granted in part.

II.    Facts.

The facts are alleged by Plaintiff in the Amended Complaint (Doc. 13), unless otherwise indicated.  By stating these facts, the Court does not intend to indicate that any of the facts stated herein are true.

Plaintiff Reginald Spencer is a former employee of Defendant City of Eutaw.  The City of Eutaw, Alabama is a municipal corporation, which employed Plaintiff and Defendants Raymond Steele, Joe Powell, Darlene Robinson, Joe C. Samuel, and Trudie Cox at all times relevant to the allegations of the Complaint.  Defendant  Raymond Steele ("Steele") is the Mayor of the City of Eutaw.  Defendants  Joe Powell ("Powell"), Darlene Robinson ("Robinson"), Joe C. Samuel ("Samuel"),[11] and Trudie Cox

---

[11]In the section referring to the parties in the Amended Complaint, Plaintiff refers to the defendant as Joe C. Sanders and does not indicate that he is a member of the City Council (Doc. 13 ¶ 8); however, Plaintiff later refers to Defendant Joe C. Samuel as a member of the City Council (Doc. 13 ¶ 10).  For purposes of this Opinion, the Court will assume that the defendant is a member of the City Council, and will refer to him as

("Cox")[12] are members of the City Council for the City of Eutaw (collectively, the "City Council members").

After completing the Law Enforcement Academy at the University of Alabama in 1990 and the K-9 Academy in March 1991, Plaintiff was hired as a police K-9 officer by Vernie Stripling, Chief of Police for the City of Eutaw.

In 1994, Vernie Stripling retired from his position as the Chief of Police.  Pursuant to procedure, the Assistant Chief, Dennis Stripling, was then appointed to the Chief of Police position.  Then, in 1996, Dennis Stripling retired, and Plaintiff was appointed Acting Chief of Police and later was appointed to the position of Chief of Police in 1997,[13] becoming the first black Chief of Police for the City of Eutaw.  After Plaintiff was appointed Acting Chief of Police, Defendants agreed with Plaintiff to convert the position of Chief of Police from an hourly pay position to a salaried position,

---

"Samuel."

[12]In the section referring to the parties in the Amended Complaint, Plaintiff does not indicate that Defendant Cox is a member of the City Council (Doc. 13 ¶ 9); however, in the next paragraph, Plaintiff refers to her as a member of the City Council (Doc. 13 ¶ 10).  For purposes of this Opinion, the Court will assume that the defendant is a member of the City Council.

[13]James E. ("Buddy") Gay served as the Mayor of the City of Eutaw and Steele served as a member of the City Council at the time Plaintiff was appointed as the Chief of Police.

with the salary compensating Plaintiff for the loss of earning overtime. However, Defendants failed to change the salary to compensate Plaintiff for loss of overtime.

Some time after Plaintiff was appointed as the Acting Chief of Police, Mike Turner was appointed to the position of Director of Public Safety.  As Director of Public Safety, Turner was over the Police Department, which Plaintiff contends circumvented the authority of the Chief of Police and deviated from the standard procedure of vesting authority and management of the Police Department with the Chief of Police.

In 2000, Steele successfully ran for the position of Mayor of the City of Eutaw.  Shortly after becoming Mayor, Steele commented to Plaintiff that he "would 'see to getting rid of him as Chief of Police'" (Doc. 13 at ¶ 13(g)), and thereafter took actions to interfere with Plaintiff's employment as Chief of Police.  For example, in 2002, Steele refused to allow Plaintiff to hire more than one new police officer, even though the City Council approved the hiring of two additional officers.

Then, when the Greene County E-911 system became fully operational in 2004, Steele insisted that Plaintiff obtain a letter of resignation from all

of the dispatchers, including the URC Clerk, although Plaintiff had informed Steele prior to the implementation of the Greene County E-911 that the URC Clerk position, which was held by his wife, should stay within the Police Department.[14]  While Plaintiff claims that he tried to comply with Steele's request, the dispatchers refused to submit letters of resignation; rather, they stated that they were not resigning.  Steele followed up with Plaintiff by letter, threatening disciplinary action if he did not obtain the letters of resignation from all dispatchers.  Plaintiff was unable to comply, and Steele took disciplinary action against Plaintiff for insubordination.  Following this incident, Steele was instrumental in getting a City Ordinance, which stated that the "City Magistrate, the Fire Chief, and the Chief of Police worked at the pleasure of the Mayor and the City Council," changed to the "City Magistrate, the Fire Chief, and the Chief of Police worked at the pleasure of the Mayor."  (Doc. 13 ¶¶ 13(c), 13(g)(3).).

According to Plaintiff, Steele repeatedly told Plaintiff, while employed as Chief of Police, to get out of his office.  In addition, whenever Plaintiff

---

[14]While Steele attempted to terminate the employment of Plaintiff's wife by requesting the resignation of the dispatchers, the City Council preserved the position of the URC Clerk.

disagreed with his actions, Steele ordered Plaintiff out of his office and disciplined him for insubordination.  Steele also told Plaintiff that he could not voice his opinion or disagree with Steele on numerous occasions.   In 2006, Plaintiff told Steele that if ordered to leave his office, he would not return.  Steele responded by stating that Plaintiff would come back if the Mayor told him to.  As Plaintiff left the office on this occasion, Steele told Plaintiff that he was a "sick man."  (Doc. 13 ¶ 13(g)(6).)  In addition, Steele spoke to Plaintiff in a negative manner, shouting at him, on numerous occasions in 2006 and 2007.  When Plaintiff asked Steele to speak in a less harsh manner, Steele told Plaintiff that he couldn't tell him how to speak to him.

In 2006, Steele gave Plaintiff a "Secure our Schools" grant application with the instructions to apply for funds.  Plaintiff spoke with the City Clerk to obtain the necessary information to fill out the grant application; however, Steele spoke with Plaintiff the next day, telling him that he couldn't apply for anything without going through him first. Also, in 2006, Plaintiff informed Steele and the City Council, by letter, that the City needed more police officers to protect the citizens of the City of Eutaw.

Steele refused to discuss the issue with the members of the City Council. Robinson later accused Plaintiff of "trying to paint us in a corner," and threatened that Plaintiff would not like the result of his actions.  (Doc. 13 ¶ 13(g)(9).)

When the City of Eutaw purchased the National Guard Armory in 2006, Plaintiff requested that the Police Department be allowed to use a room in the building as a weight room for law enforcement.  While Steele designated a room for that purpose and agreed Plaintiff could apply for a Community Hero Grant from Wal-Mart to purchase equipment, Steele refused to inform the City Council that the matter had been cleared with him prior to submitting the application for the grant when Wal-Mart awarded the Police Department  $ 500.00.  In 2007, the Greene County Racing Commission contacted Plaintiff, advising him to apply for funds for the equipment through their Charity Day Fund.  While Plaintiff spoke with Steele about the matter, the City Council members informed Plaintiff that Steele had not mentioned the matter to them and that they had no objection to him making an application for funds from the Charity Day Funds.  This matter was later approved at a City Council meeting.  Thereafter, Steele withheld

the application for funds from the Greene County Racing Commission's Charity Day Funds, and refused to return it to Plaintiff.  Since Steele refused to return the application to Plaintiff, a grant for equipment money from Greene County Racing Commission's Charity Day Funds was not made.

In January 2007, Plaintiff sought approval from Steele to apply the resources of the Police Department to move "tagged" vehicles by hiring a tow company.  The Mayor and City Council refused to approve the request.  Later, Steele told Plaintiff to move some cars over by the preschool.  While Plaintiff reminded Steele that the request to hire a tow company was denied, Steele continued to admonish Plaintiff for failing to move the vehicles.

In 2007, Steele admonished Plaintiff for failing to take action against the crime in the residential areas of King Village and Branch Heights.  He also accused Plaintiff of telling the newspaper that these areas "were like war zones."  (Doc. 13 ¶ 13(g)(15).)  This statement was actually made by a reporter; however, Steele continued to blame Plaintiff for the statement, refused to recognize Plaintiff's actions in attempting to address the problem in these areas, and disciplined Plaintiff as a result of these matters.

On or around June 22, 2007, Plaintiff informed the City Council that the Police Department needed additional officers to protect the City. Steele became angry with Plaintiff for making the request for additional officers.  Also, on two occasions in 2007, Plaintiff requested permission to hire two local people as police officers.  While both were qualified, Steele refused to allow Plaintiff to hire them.  According to Plaintiff, the policies provided that the Chief of Police would hire personnel for the Police Department; however, Steele changed this policy so that he could do all the hiring for the Police Department.  Steele hired Darrin Paris as a police officer in 2007, over Plaintiff's objection that Paris just wanted the City of Eutaw Police Department to send him to the Police Academy for certification.

In 2007, Plaintiff requested various items as to improve the City of Eutaw Police Department including more officers, the fitness center, hiring local employees, storage space, vehicles, grant funds, wrecker contract, and the like.  However, all of these items were opposed by Steele, and the request for each was refused.

On June 22, 2007,[15] Plaintiff was terminated without first receiving a hearing or being told of the basis for his termination.  Plaintiff claims that Defendants terminated his employment without due process of law, and interfered with his right to employment.

III.    Standard of Review.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).  To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if

---

[15]Plaintiff also references August 22, 2007 as the date of termination.  (Doc. 13 at 30.)

doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)(internal citations omitted).[16]  The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id.* at 1974.

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)(quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  All "reasonable inferences" are drawn in favor of the plaintiff.  *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).  "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003)(quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th

---

[16]The Supreme Court in *Bell Atl. Corp. v. Twombly* abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson.*  *See Bell Atl. Corp.*, 127 S.Ct. at 1968 (quoting *Conley*, 355 U.S. 41, 45-46 (1957)).  The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp.*, 127 S.Ct. at 1960.

Cir. 2001)).  Furthermore, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory."  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997)(citation omitted).

IV.   Discussion.

   A.   Jurisdiction.

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).  Since federal courts are courts of limited jurisdiction, subject matter jurisdiction must exist before a court can decide any issues presented in the case.  *See id.*   Therefore, a federal court has a duty to assure itself that it has subject matter jurisdiction in each case.

A plaintiff must affirmatively plead the jurisdiction of the federal court pursuant to Federal Rule of Civil Procedure 8.  FED. R. CIV. P. 8(a)(1). It is hornbook law that the jurisdiction of the federal court must appear in the plaintiff's statement of his claim.  *See Joy v. City of St. Louis,* 201 U.S.

332, 340-41 (1906).  In pleading the jurisdiction of a federal court, "[i]t is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case. . . .  He must allege in his pleading the facts essential to show jurisdiction."  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182 & 189 (1936). However, a federal court also has jurisdiction to inquire into its own jurisdiction.  *Romero v. Int'l Terminal Co.*, 358 U.S. 354, 359 (1959).

In the jurisdictional section of the Amended Complaint, Plaintiff alleges that jurisdiction in this case is sought pursuant to 42 U.S.C. § 1988.[17]

---

[17]In his response to Defendants' Amended Motion to Dismiss, Plaintiff claims that he made reference to the violation of 42 U.S.C. § 1981 ("§ 1981"), and that jurisdiction is sought under § 1981.  (Doc. 30 at 6-7.)  Jurisdiction may not be founded on § 1981; rather, a § 1981 claim requires invocation of jurisdiction pursuant to 28 U.S.C. § 1331.

In addition, Plaintiff did not in his Amended Complaint, or in any other documents make reference to a claim under § 1981.  Plaintiff's only reference to § 1981 was in his response to Defendants' Motion to Dismiss Amended Complaint, where he stated that "Defendants' Motion to Dismiss should be denied because the allegations of the Plaintiff allege violations of the provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of Title 42 U.S.C., whether the Title is properly set out or not" (Doc. 25 ¶ 6); however, Plaintiff provided no support for this contention.  While Plaintiff provides that the appropriate reference was made to § 1981 to put Defendants on notice, Plaintiff has not pointed to the allegations in the Amended Complaint that would put Defendants on notice.

To the extent that Plaintiff does  bring a § 1981 as a separate action, the § 1981 and § 1983 claims may be treated as one cause of action under § 1983 to the extent that Defendants are state actors.  *See Butts v. County of Volusia*, 222 F.3d 891, 893 (11th Cir. 2000)(holding that "§ 1983 constitutes the exclusive remedy against state actors for violations under § 1981"); *Busby v. City of Orlando*, 931 F.2d 764, 771 n.6 (11th Cir.

However, § 1988 does not provide an independent basis for jurisdiction. *Locust v. Degiovanni*, 485 F. Supp. 551, 552 (D.C.Pa. 1980).

In addition to contending that jurisdiction is sought pursuant to § 1988, Plaintiff also makes reference to  42 U.S.C. § 1983 ("§ 1983") in the Amended Complaint, claiming that Defendants violated this section in terminating Plaintiff without due process.  By its terms, § 1983 provides a cause of action for deprivation "of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of law. 42 U.S.C. § 1983.  It does not, by itself, confer federal jurisdiction.  Claims under 42 U.S.C. § 1983 require invocation of federal question jurisdiction under 28 U.S.C. § 1331.  Therefore, Plaintiff has failed to meet his burden to plead federal question jurisdiction.

---

1991)(stating that the § 1981 claim was merged into the § 1983 claim because "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor")(quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)(holding that § 1981 can provide no broader remedy against a state actor than § 1983)); *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991)(declining to address the applicability of Patterson to a section 1981 claim and holding that any relief available under § 1981 was duplicative of that available under § 1983).  However, Defendants have not addressed the possible § 1981 claim in their Motion to Dismiss. Therefore, the Court will not address this claim in this Opinion.

However, with regard to the issue of the Amended Complaint's "deficiency in alleging proper jurisdiction, it is well settled that where a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute." *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir. 1980)(citations omitted).[18]  Moreover, the court "has a duty under Rule 8(a) of the Federal Rules of Civil Procedure to read the complaint liberally and determine whether the facts set forth justify it in assuming jurisdiction on grounds other than those pleaded." *Id.*  While federal courts are liberal in their pleading practices, it is still the rule that a general allegation of jurisdiction must be borne out by a well-pleaded claim; general conclusory allegations unsupported by facts are insufficient to constitute a cause of action.  *Jewell v. City of Covington, Ga.,* 425 F.2d 459, 460 (5th Cir. 1970).

Here, an examination of the entire Amended Complaint reveals a basis for assuming jurisdiction under 28 U.S.C. § 1331 as it appears that the

---

[18] *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc)(adopting as binding precedent in the Eleventh Circuit, all decisions of the former Fifth Circuit announced prior to October 1, 1981).

Amended Complaint states a cause of action under § 1983.  *See Arce v.*

*Garcia*, 434 F.3d 1254, 1258 n.8 (11th Cir. 2006)(where Plaintiff failed to

cite 28 U.S.C. § 1331, court assumed jurisdiction where the complaint's

allegations stated a cause of action under federal law); *Lykins v. Pointer,*

*Inc.*, 725 F.2d 645, 646 (11th Cir. 1984); *Hildebrand,* 622 F.2d at 181.

Paragraph 12 of the Amended Complaint alleges that "Defendants violated

42 U.S.C. § 1983 in depriving Plaintiff of his employment without due

process of law."  (Doc. 13 ¶ 12(h).)   Plaintiff claims that he was terminated

without a reason and without a hearing as guaranteed in the City's Personnel

Rules and Regulations.  *Id.* at ¶ 12(a).  Also, in the Jurisdiction section of the

Amended Complaint, Plaintiff quotes from the language of § 1983, even

though he references § 1988.  *Id.* at ¶¶ 1 & 2.  While Plaintiff repeatedly

references § 1988 in his Amended Complaint and his response to the Motion

to Dismiss, he alleges that there are sufficient allegations that Defendants,

acting in their legal capacity, subjected Plaintiff to the deprivation of his

rights, privileges or immunities:  termination of his employment without due

process and interference with Plaintiff's right to employment.  This appears

to be an allegation of a violation of § 1983.  Therefore, the Court will not

dismiss the Amended Complaint for lack of jurisdiction.

B.    Failure to State a Claim.

Defendants contend that Plaintiff's claims should be dismissed because Plaintiff failed to state a claim upon which relief can be granted.[19]  (Doc. 29.)  In addition, Defendants argue that "Plaintiff has not stated a federal claim or cause of action against the Defendants much less a policy or practice that comprises a constitutional violation."  (Doc. 14 at 3.)

1.    42 U.S.C. § 1988.

In the Amended Complaint, Plaintiff alleges that Defendants violated § 1988 by terminating Plaintiff's employment without due process of the law and interfering with Plaintiff's employment.  (Doc. 13 ¶¶ 1, 12.)  In addition,

---

[19]Defendants rely on the defense that Plaintiff has failed to state a claim with respect to each count.  However, Defendants do not appear to elaborate on their position or provide legal authority to support the failure to state a claim argument which respect to Plaintiff's claims for breach of contract; negligent breach of contract; fraud; negligent, intentional, or reckless fraud; conspiracy; and pattern and practice of reckless fraud, except to the extent discussed herein.  Therefore, the Court need not analyze these issues.  *See U.S. Steel Corp.*, 495 F.3d at 1287 (where appellants argued that the SSA acted arbitrarily and capriciously but did not provide legal authority to support their argument or elaborate upon their argument, the court stated that it would "not address this perfunctory and underdeveloped argument"); *see also Flanigan's Enters., Inc.*, 242 F.3d at 987 n.16 (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower*, 826 F.2d at 1576 (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

Plaintiff repeatedly references § 1988 throughout his Amended Complaint.

> 42 U.S.C. § 1988 provides:
>
> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C. § 1988(a).[20]  However, a plaintiff cannot rely on § 1988 in stating a claim against a defendant because this statute is merely procedural; it does not create an independent cause of action nor does it create rights or confer jurisdiction.  *See Estes v. Tuscaloosa County, Ala.*, 696 F.2d 898, 901 (11th Cir. 1983)("Section 1988 authorizes attorney's fees as part of a remedy for violations of civil rights statutes; it does not create an

---

[20]42 U.S.C. § 1988(b) discusses procedures for recovering attorney's fees in certain cases, and 42 U.S.C. § 1988(c) discusses the award of expert fees as part of the attorney's fee.

independent right of action. Nor does § 1988 operate to make an award of attorney's fees an essential ingredient in providing "due process."); *McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1388 n.1 (11th Cir. 1981)(noting that "section 1988 does not create an independent cause of action for deprivation of constitutional rights")(citation omitted); *Schroder v. Volcker,* 864 F.2d 97, 99 (10th Cir. 1988)(stating that § 1988 does not create an independent cause of action, rather, it simply "defines procedures under which remedies may be sought in civil rights actions")(citation omitted).  Therefore, Plaintiff's claims under 42 U.S.C. § 1988 are due to be dismissed.

> 2.    42 U.S.C. § 1983.

Defendants claim that they are not liable under § 1983 because the City Council members are entitled to absolute legislative immunity; the official capacity claims against the independent defendants are tantamount to suing the City; the individual defendants are entitled to qualified immunity; the City is not liable under § 1983 on a simple theory of respondeat superior or under an agency theory; and the due process claims are due to be dismissed as a matter of law.

a.   Individual Defendants.

i.   Absolute Immunity: Legislative Function
Immunity for Eutaw City Council Members.

"Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities." *Bogan v. Scott-Harris,* 523 U.S. 44, 54 (1998).  This absolute legislative immunity "attaches to all actions taken 'in the sphere of legislative activity'" *Id.* (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)), and provides government officials protection from suit "when they take actions that are 'an integral part of the deliberative and communicative processes by which [legislators] participate in . . . proceedings with respect to the consideration and passage or rejection of proposed legislation'" *Smith v. Lomax,* 45 F.3d 402, 405 (11th Cir. 1995)(quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972)).  "Only those acts which are 'necessary to preserve the integrity of the legislative process' are protected." *Smith*, 45 F.3d at 405 (citing *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir.1992)).

In determining whether an act is legislative, the court must look at the "nature of the act, rather than on the motive or intent of the official

performing it." *Bogan,* 523 U.S. at 54.    "A legislative act involves policymaking rather than mere administrative application of existing policies." *Smith*, 45 F.3d at 406 (citing *Minton v. St. Bernard Parish Sch. Bd.*, 803 F.2d 129, 135 (5th Cir.1986)).  "If the facts utilized in making a decision are specific, rather than general, in nature, then the decision is more likely administrative.  Moreover, if the decision impacts specific individuals, rather than the general population, it is more apt to be administrative in nature."  *Smith*, 45 F.3d at 406.

Acts such as "voting, speech making on the floor of the legislative assembly, preparing committee reports, and participating in committee investigations and proceedings are generally deemed legislative." *Yeldell*, 956 F.2d at 1062 (internal citations omitted); *but see Smith*, 45 F.3d at 406 ("[I]t has been held that '[a]lthough a local legislator may vote on an issue, that alone does not necessarily determine that he or she was acting in a legislative capacity.'")(citation omitted).  On the other hand, acts "such as the public distribution of press releases and newsletters," "private publication of committee materials," "the acceptance of bribes in return for votes on pending legislative business," and the denial of licenses are

generally not protected by the doctrine of legislative immunity.  *Yeldell*, 956 F.2d at 1062.  In addition, "legislators' employment decisions are [typically] deemed administrative acts."  *Smith*, 45 F.3d at 405 (where the court concluded that the members of board of county commissioners' vote to appoint Hanson to the clerk position was an administrative act and, thus, was not protected by legislative immunity)(citations omitted); *see also Horne v. Russell County Comm'n,* 379 F. Supp. 2d 1305, 1337 (M.D. Ala. 2005)(citing *Yeldell*, 956 F.2d at 1062)("Decisions to hire, fire, and demote certain individuals are administrative and not protected by legislative immunity.").

Here, the actions identified by the City Council members do not appear to entitle them to legislative immunity.  Defendants Powell, Robinson, Samuel, and Cox contend that "the Plaintiff takes issue with how the Eutaw City Council Members voted regarding his termination of employment."[21]  (Doc. 29-2 at 7.)  However, with regard to employment

---

[21]Defendants also argue that the City Council members are entitled to legislative immunity because "the Council's actions were taken in furtherance of their duties as a member of the City Council of the City of Eutaw."  (Doc. 31 at 6; Doc. 27 at 6.) However, Defendants do not specify what further actions entitle them to legislative immunity.  Therefore, the Court deems any further argument as to the entitlement of

decisions, such as the decision to fire Plaintiff, there is no legislative immunity as that action is an administrative action.  *See Smith,*  45 F.3d 402, 405-06; *Yeldell,* 956 F.2d at 1062.  Thus, the City Council members are not entitled to legislative immunity.

### ii.    Official Capacity.

Defendants contend that all claims against Steele, Powell, Robinson, Samuel, and Cox in their official capacity are due to be dismissed as these claims are tantamount to suing the City of Eutaw.  (Doc. 27 at 4.)

According to the United States Supreme Court, official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)(quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  Official capacity "suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Busby*

---

legislative immunity waived.  *See U.S. Steel*, 495 F.3d at 1287 n.13 (where appellants provided no legal authority to support their argument nor any elaboration upon their argument, the court held that it need not address the "perfunctory and underdeveloped argument"); *Flanigan's Enters., Inc.*, 242 F.3d at 987 n.16 (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower*, 826 F.2d at 1576 (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

*v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991); *Brandon v. Holt*, 469 U.S. 464, 469, 471-72 (1985)(making explicit the point that "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond"); *see also Owen v. City of Independence*, 445 U.S. 622, 638 n.18 (1980); *Smith v. Allen*, 502 F.3d 1255, 1271-72 (11th Cir. 2007). Since a suit against a municipal officer in his official capacity and a suit directly against the municipality "are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond)." *Busby*, 931 F.2d at 776 (holding that plaintiff could not maintain § 1983 claims against the mayor, police captain, police lieutenant and chief of police in their official capacities); *see also Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1270 (11th Cir. 2005)(finding that summary judgment was properly granted in favor of city officials in their official capacity because a suit against a municipal officer is functionally equivalent of that against the city); *Hamilton v. City of*

*Jackson*, 508 F. Supp. 2d 1045, 1055 (S.D. Ala. 2007); *Holley v. City of Roanoke*, 162 F. Supp. 2d 1335, 1341 n.2 (M.D. Ala. 2001)(dismissing § 1983 official capacity claims against the mayor and city council members as redundant of the claims against the city).  Therefore, the § 1983 claims against Mayor Steele and the City Council members, Powell, Robinson, Samuel, and Cox, in their official capacity are due to be dismissed, since Plaintiff has also brought § 1983 claims against the City of Eutaw.

> iii.   Individual Capacity: Qualified Immunity and Heightened Pleading.

Defendants Steele, Powell, Robinson, Samuel, and Cox contend that Plaintiff's individual capacity federal claims are due to be dismissed because they are entitled to qualified immunity and the Amended Complaint fails to meet the heightened pleading standard.

> a)   Qualified Immunity.

Under the qualified immunity doctrine, it is well established that "[s]o long as a government official acts within the scope of his discretionary authority and does not violate clearly established law [of which a reasonable person would have known], the doctrine of qualified immunity protects

him."  *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002); *Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000).   A public official is entitled to qualified immunity if his actions were objectively reasonable.  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987)).  The purpose of qualified immunity is to "ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)(quoting *Saucier v. Katz*, 535 U.S. 194, 206 (2001)).

To be successful on a qualified immunity defense, a public official "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"  *Lee*, 284 F.3d at 1194 (citations omitted).  "Second, if the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law."  *Id*.  The Eleventh Circuit Court of Appeals has emphasized that "the burden is first on *the defendant* to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of

his discretionary authority." *Harbert Int'l, Inc.*, 157 F.3d at 1281 (emphasis added).  "*If, and only if*, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law."  *Id*.  (emphasis added).[22]

In the Eleventh Circuit, to "establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Int'l, Inc.*, 157 F.3d at 1282; *see also Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)(stating that "a government official can prove he acted within the scope of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority'")(citation omitted).  A court should not be "overly narrow" in interpreting the term "discretionary authority." *Jordan v. Doe*, 38 F.2d

---

[22]"While a number of [Eleventh Circuit] cases omit this step of the analysis, binding Supreme Court and Eleventh Circuit precedents require us to consider expressly this critical threshold matter." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)(internal citations omitted).

1559, 1566 (11th Cir. 1994); *see also Godby v. Montgomery County Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1998)(the determination of whether an officer is acting within his discretionary authority is "quite a low hurdle to clear" because "of the level of generality at which this requirement must be determined").  However, "[a] bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice."[23]  *Harbert Int'l, Inc.*, 157 F.3d at 1282 (citing *Espanola Way Corp. v. Meyerson,* 690 F.2d 827, 830 (11th Cir. 1982)).  To determine whether a defendant has discharged his burden, " a court must ask whether the act complained of, if done for a proper purpose, would be

_____

[23]According to the Eleventh Circuit:

> To establish [that a defendant is acting within the scope of his discretionary authority], there must be more than a bald assertion by the defendant that the complained-of actions were undertaken pursuant to the performance of his duties and within the scope of his discretionary authority; there must be a showing by competent . . . materials of objective circumstances that would compel that conclusion. . . . Exactly what will suffice to establish such objective circumstances will . . . vary in proportion to the degree of discretion inherent in the defendant's office. Such objective circumstances necessarily must encompass the factual context within which the complained-of conduct took place. But also appropriate is a showing by the defendant of facts relating to the scope of his official duties-e.g., a showing of the circumstances through which he initially came to believe that his lawful authority included within its scope actions of the type that are complained of by the plaintiff.

*Harbert Int'l*, 157 F.3d at 1282 (quoting *Barker v. Norman*, 651 F.2d 1107, 1124-25 (5th Cir. 1981)).

within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l, Inc.*, 157 F.3d at 1282 (citations and internal quotations omitted).

Here, Defendants take no steps to show that they were acting pursuant to their discretionary authority at any time during the actions alleged by Plaintiff. (Doc. 29-2.) Defendants have not established, or even asserted, that they were acting within the scope of their discretionary authority. Therefore, this Court does not need to examine the second prong of the two-part analysis because Defendants have not shown that they are entitled to qualified immunity in this case.

Nonetheless, for purposes of this analysis, the Court will assume that Defendants were acting within their discretionary authority based on the allegations in the Amended Complaint. Here, the constitutional injury Plaintiff complains of concerns Defendants' alleged termination of Plaintiff's employment without due process of law and interference with Plaintiff's right to employment. The allegations in the Amended Complaint are sufficient to show that Defendants were acting within their discretionary authority. For example, Plaintiff alleges that Defendants Steele, Powell,

Robinson, Samuel, and Cox, as Mayor and City Council members, "had the authority, or apparently had the authority, from the Defendant, City of Eutaw, Alabama, to make the [employment] agreement and take the actions complained of hereunder, and to bind Defendant City of Eutaw, Alabama, thereby."  (Doc. 13 ¶ 10.)  Plaintiff alleges that Defendants "who, under color of statute, ordinance, regulation, custom, or usage" of Alabama subjected Plaintiff "to the deprivation of his rights . . . : termination of his employment without due process of law and interference with the Plaintiff's right to employment." (Doc. 13 ¶¶ 1, 10(a) & 14(b).)  Plaintiff further states that Defendants Steele, Powell, Robinson, Samuel, and Cox "were the agents, servants, employees and/or representatives" of the City of Eutaw, "and the acts of the Defendants . . . were performed or committed while said Defendants were working in the line and scope of their employment with and/or under the authority of the agency relationship of the Defendant, City of Eutaw, Alabama." (Doc. 13 ¶ 15(c).)  These allegations are sufficient to show that Defendants' actions were undertaken pursuant to the performance of their duties, and within the scope of their authority, indicating that Defendants were acting within, or reasonably related to, the

outer perimeter of their duties.

Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to prove that qualified immunity does not apply. *Lee*, 284 F.3d at 1194. This is a difficult burden to discharge because "only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." *Id.* (quoting *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994)(stating that "courts should think long and hard before stripping defendants of immunity")).

The Eleventh Circuit mandates a two-part test to ascertain whether a public official, acting within the scope of his discretionary authority, is protected by qualified immunity. First, the Court must determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Vinyard*, 311 F.3d at 1346 (citing *Hope*, 536 U.S. at 735)(As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury," do the facts establish a constitutional violation.). Second, if the Court is convinced that a constitutional right would have been violated under the plaintiff's version of the facts, the

Court must determine whether the right was clearly established at the time

of the alleged violation.  *Vinyard*, 311 F.3d at 1346.  The Court will deny a

public official qualified immunity only if the plaintiff convinces the Court

that the constitutional right at issue was clearly established at the time of

the alleged violation to the degree that these defendants had "fair warning"

that their conduct violated the plaintiff's constitutional rights.  *See*

*Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003); *Rodriguez v.*

*Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002).

Plaintiff alleges that Defendants violated § 1983[24] in depriving him of

his employment without due process of law.[25]  Plaintiff claims that

Defendants deprived him of his constitutional right to due process by

terminating him without holding a hearing as required by the personnel rules

and without providing him a specific reason for termination.  To establish a

due process claim, a plaintiff "must show that []he had a protected property

---

[24]"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994)(quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Therefore, the Court must look to the due process clause to see if Plaintiff has adequately stated a claim.

[25]Plaintiff does not address the issue of qualified immunity in his responses to the motion to dismiss.  (Docs. 25 & 30.)

interest in h[is] employment." *Epps v. Watson,* 492 F.3d 1240, 1246 (11th Cir. 2007)(citing *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 571, 576 (1972)).  In order to have "a protected property interest in employment, a person must have more than a mere unilateral expectation of continued employment; one must have a legitimate claim of entitlement to continued employment."  *Warren v. Crawford,* 927 F.2d 559, 562 (11th Cir. 1991) (citing *Board of Regents of State Colls.*, 408 U.S. at 577).  Property interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colls.*, 408 U.S. at 577.  Therefore, the determination of whether a public employee has a property interest in his job requires examination of relevant state law.  *Epps,* 492 F.3d at 1246. "Generally, a public employee has a property interest in continued employment if state law or local ordinance in any way limits the power of the appointing body to dismiss an employee."  *Id.* (quoting *Ross v. Clayton County, Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999)).

Here, the Court must determine whether Plaintiff has alleged the basis upon which the property interest is created for his job.  In the Amended Complaint, Plaintiff states that a City Ordinance provided that the Chief of Police worked at the pleasure of the Mayor.  (Doc. 13 ¶ 13(g)(3).)  From this City Ordinance, it appears that Plaintiff held his position at will and therefore did not have a property interest in his employment.  *See Douglas v. Evans*, 916 F. Supp. 1539, 1547 (M.D. Ala. 1996)(citing *Bishop v. Wood*, 426 U.S. 341 (1976)("If the employee holds his position only at the 'will' of the employer, there is no property interest in continued employment."). However, Plaintiff further asserts that the City's Personnel Rules and Regulations guarantee a hearing before termination.  (Doc. 13 ¶ 12(a).) According to the Eleventh Circuit and the Alabama Supreme Court, a contract for continued employment may be implied from a personnel policy manual.  *See Lassiter v. Covington*, 861 F.2d 680, 684 (11th Cir. 1988); *Anderson-Free v. Steptoe*, 970 F. Supp. 945, 955 (M.D. Ala. 1997); *Hoffman-LaRoche, Inc. v. Campbell*, 512 So. 2d 725, 733 (Ala.1987).  The Eleventh Circuit has stated that:

[A] personnel policy manual issued by the employer may provide

> the employee an independent basis for a property interest in his continued employment. The Alabama Supreme Court, in *Hoffman-LaRoche, Inc. v. Campbell*, expressly recognized that a policy contained in an employee manual issued to an employee may become a binding contract once it is accepted by the employee through his continuing to work when he is not required to do so. If such a contract is determined to exist, it may provide the employee with an expectation of continued employment by restricting the employer's ability to exercise his powers to terminate the employment relationship. Such a contractual relationship may provide the employee with a property interest sufficient to require his employer to give him a hearing when the employment relationship is terminated.

*Lassiter*, 861 F.2d at 684 (citing *Hoffman-LaRoche, Inc.*, 512 So. 2d at 733).[26]

In the Amended Complaint, Plaintiff alleges that the City's Personnel Rules and Regulations provide procedures for termination of an employee, *e.g.*, a hearing prior to termination.  The existence of these procedures governing the termination of an employee could be construed as limiting the ability to terminate Plaintiff as the Chief of Police.  Construing all inferences in favor

---

[26]The court in *Hoffman-Roche* established a three-prong test to determine whether a policy contained in an employee handbook is sufficient to create a contract:

> First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration.

*Lassiter*, 861 F.2d at 864 (citing *Hoffman-La Roche, Inc.*, 512 So. 2d at 735).

of Plaintiff, the Court finds that Plaintiff has established a property interest, since Plaintiff has alleged that the City's Personnel Rules and Regulations entitled him to some type of procedure, a hearing, before being terminated. Therefore, Plaintiff has sufficiently plead that he has a property interest in his employment and is entitled to due process protections.

Having sufficiently alleged a protected property interest, the Court must determine if Plaintiffs' rights were clearly established for purposes of qualified immunity.   In order for a constitutional right to be "clearly established," it must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . [,] and in the light of pre-existing law[,] the unlawfulness must be apparent." *Hope*, 536 U.S. at 739 (quoting *Anderson*, 483 U.S. at 640).  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 827 n.4 (11th Cir. 1997) (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996)).  In the absence of case law, a plaintiff must show that "the words of a federal statute or federal constitutional

provision [are] so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1317 (11th Cir. 2003) (quoting *Vinyard*, 311 F.3d at 1350).

"[I]t is clearly established that an employee with a protected property interest in continued employment may not be terminated without due process of law." *Epps,* 492 F.3d at 1247 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)(holding that public employee with property interest in continued employment is entitled, prior to termination, "to oral or written notice of the charges against him, an explanation of the employer's evidence and an opportunity to present his side of the story")). Therefore, Plaintiff has alleged a constitutional violation of a clearly established right.

b)     Heightened Pleading.

However, when confronted with a motion to dismiss on the basis of qualified immunity, the Eleventh Circuit imposes a "heightened pleading

requirement" on plaintiffs.[27]  *See GJR Invs., Inc. v. County of Escambia*, 132

F.3d 1359, 1367 (11th Cir. 1998).  While Federal Rule of Civil Procedure 8

allows a plaintiff leeway in framing his complaint, the Eleventh Circuit "has

tightened the application of Rule 8 with respect to § 1983 cases in an effort

to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege

with some specificity the facts which make out its claim."  *Id.* (citing

*Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.1992)

(citing *Arnold v. Bd. of Educ.*, 880 F.2d 305, 309 (11th Cir.1989))).  The

heightened pleading standard requires "[s]ome factual detail in the

pleadings . . . to the adjudication of § 1983 claims. This is particularly true

in cases involving qualified immunity, where we must determine whether a

defendant's actions violated a clearly established right."  *GJR Invs., Inc.*,

132 F.3d at 1367.  The Eleventh Circuit has justified the need for heightened

pleading in such cases because of the particular need to "determine

whether a defendant's actions violated a clearly established right."  *Id.* at

1367.  In order to satisfy the heightened pleading standard, a plaintiff "has

---

[27]Accordingly, when reviewing a motion to dismiss on qualified immunity grounds, courts are guided both by the regular 12(b)(6) standard and by the heightened pleading requirement.

to come forward with specific facts, concerning each defendant, indicating that each defendant has violated" plaintiff's constitutional rights.  *Smith v. State of Ala.*, 996 F. Supp. 1203, 1212 (M.D. Ala. 1998).[28]  To plead specific enough information for the court to conclude that the defendants have violated a constitutional right, the plaintiff must allege specific acts on the part of all the defendants.  *Mercer v. Hammonds*, 134 F.3d 1066, 1070-71 (11th Cir. 1998).

As discussed above, the Court has determined that Plaintiff sufficiently alleged a constitutional violation of a clearly established right.  However, in order to satisfy the heightened pleading requirement, Plaintiff must allege facts sufficient to show how each defendant violated his right to due process by terminating him without a hearing.  Here, Plaintiff has alleged that:

> [o]n June 22, 2007, at about 9:00 a.m., recommended that the Plaintiff be terminated.  Plaintiff was terminated without first

---

[28]*See also Cobb v. Hawsey*, 2007 WL 3086023, at *2 (S.D. Ala. Oct. 19, 2007)(stating that the complaint should, at a minimum, identify the particular right allegedly violated by each named defendant, the constitutional basis for such right, and the basic facts underlying such claim); *Trimble v. Upton*, 2006 WL 2398774, at *4 (M.D. Fla. 2006)(stating that the plaintiff must provide support in the statement of facts for the claimed constitutional violations, and "should clearly describe *how each named defendant* is involved in the alleged claim").

being provided a hearing on the matters that were the subject
of the termination and without being informed of the basis for
his termination.   The actions of the Defendants were a direct
effort to interfere with the employment of the Plaintiff and the
terms and conditions of Plaintiff's employment as Chief of Police
and a direct violation of the Defendant's right to due process
under Title 42 U.S.C. § 1988.

(Doc. 13 ¶ 13(g)(22).)   In making these allegations, Plaintiff states that

"Defendants terminated Plaintiff without first providing . . . [him] with a

hearing;" "Defendants deprived Plaintiff of his constitutional right to due

process by failing to hold a hearing;" and "Defendants violated 42 U.S.C. §

1983 in depriving Plaintiff of his employment without due process." *Id.* at

¶ 12.   While Plaintiff has sufficiently alleged that he was terminated without

being provided a hearing, he has failed to present any evidence that any of

the particular Defendants personally terminated him or failed to provide him

with a hearing prior to his termination.   Therefore, even taking the facts

alleged in the Amended Complaint as true and assuming that there was a

constitutional violation of a clearly established right, Plaintiff has failed to

present specific evidence as to how Defendants Steele, Powell, Robinson,

Samuel, and Cox violated this right.   In addition, "[a]s a general rule,

conclusory allegations and unwarranted deductions of fact are not admitted

as true in a motion to dismiss." *South Fla. Water Mgmt. Dist. v. Montvalo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996)(citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir.1974)).  Since Plaintiff has presented only vague allegations  against "Defendants," *i.e.*, "Defendants violated 42 U.S.C. § 1983" and "Defendants terminated Plaintiff," this Court cannot accept these "conclusory allegations" as the actions of each individual defendant.  Further, similar complaints, where the plaintiff claims that "the defendants" violated his civil rights, have been described as examples of shotgun pleadings, which the Eleventh Circuit has condemned as violating Federal Rules of Civil Procedure 8(a) and 10(b).  *See Cornelius v. City of Andalusia*, 2007 WL 4224036, at *5 (M.D. Ala. Nov. 28, 2007)(citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)(where Cornelius alleged that the defendants violated his civil rights but failed to identify the conduct of any specific defendant that rendered any defendant liable, the court stated that the plaintiff failed to state with particularity the § 1983 claim). Since Plaintiff has failed to make any specific allegations with respect to each individual defendant, Plaintiff has failed to meet the heightened pleading requirement.   Consequently, the Court cannot

determine if Defendants have violated Plaintiff's due process right. *See GJR*

*Investments, Inc.*, 132 F.3d at 1367 (stating that a § 1983 plaintiff must

allege with some specificity the facts which make out his claim; otherwise,

the complaint is due to be dismissed for failure to plead with particularity).

As opposed to identifying which defendant recommended Plaintiff for

termination or which defendant in fact terminated Plaintiff without a

hearing, Plaintiff stated that it was "recommended that the Plaintiff be

terminated.  Plaintiff was terminated without first being provided a hearing.

. . ." (Doc. 13 ¶ 13(g)(22).)  Thus, based on the Amended Complaint, it is

practically impossible to match the specific acts of the defendants to

violations of Plaintiff's rights.   Therefore, this Court concludes that

Defendants are entitled to qualified immunity and the motion to dismiss the

§ 1983 individual capacity claims is due to be granted.

        b.    City of Eutaw, Alabama.[29]

---

[29]Both the United States Supreme Court and the Eleventh Circuit Court of Appeals have made it clear that a heightened pleading standard is not required in § 1983 civil rights cases alleging municipal liability. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 836-37 (11th Cir. 2004).  "Where a § 1983 claim is asserted against a municipality, only the liberal pleading standards of Rule 8(a)(2) apply." *Swann*, 388 F.3d at 836 (citing *Leatherman*, 507 U.S. at 168).

          i.      Municipality Liability / Respondeat Superior.

The City of Eutaw asserts that Plaintiff's § 1983 claim against it is due to be dismissed because a municipality is not liable under § 1983 on a theory of respondeat superior.  According to the United States Supreme Court, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell,* 436 U.S. at 690.  However, the United States Supreme Court has placed strict limitations on the liability of municipalities under § 1983.  For example, a governmental entity, such as the City of Eutaw, cannot be held liable under § 1983 on a theory of respondeat superior for acts of its employees.  *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003)(citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)("[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983."); *Monell*, 436 U.S. at 694).

A municipality may be held liable under § 1983 "only for acts for which the local government is actually responsible."  *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1027 (11th Cir. 2001)(citation omitted).  "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury that the government as an entity is responsible under § 1983."[30] *Monell*, 436 U.S. at 694; *see also Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1145 (11th Cir. 2007)("[I]t is by now axiomatic that in order to be held liable for a § 1983 violation, a municipality must be found to have itself caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory. . . .  Thus, [a plaintiff] can only succeed on [his/]her § 1983 claim against [a municipality] by showing that [his/]her injury was the result of the city's unlawful 'policy or custom.'"); *Brown v. Neumann,* 188 F.3d 1289, 1290 (11th Cir. 1999).  In order to show that a city bears responsibility for the

---

[30]The "'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).

acts of its agents, a plaintiff must demonstrate that the constitutional violations occurred: "(1) pursuant to official City policy; (2) as the result of a policy decision by a final City decision maker; or (3) as a result of a custom so ingrained in City operations as to acquired the force of official City policy." *Libman v. City of Avondale Estates*, 190 Fed. Appx. 774, 777 (11th Cir. 2006)(citing *Monell*, 436 U.S. at 690-91); *see also Pembaur*, 475 U.S. at 480-83 (requiring a three-part test for determining when the acts of a municipal officer subjects a municipality to liability under section 1983: (1) the municipality officially sanctioned or ordered the act; (2) the actor was a municipal officer with final policymaking authority; or (3) the action was taken pursuant to a policy adopted by officials responsible under state law for making policy in that area); Colleen R. Courtade, Annotation, *What Constitutes Policy or Custom for Purposes of Determining Liability of Local Government Unit under 42 U.S.C. § 1983*, 81 A.L.R. FED. 549 (1987).

a)    Policy or Custom.

A municipality is liable only for the execution of a governmental policy or custom when such "official policy" causes a constitutional violation. *Monell*, 436 U.S. at 694.  A plaintiff must "identify a municipal 'policy' or

'custom' that caused [his] injury." *Grech*, 335 F.3d at 1329 (quoting *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)(citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997))).  "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986).  Regardless of whether the basis of the § 1983 claim is a policy or a custom, "it must be the 'moving force behind the constitutional deprivation before liability may attach.'" *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985).

Here, the City of Eutaw argues that Plaintiff failed to identify a City policy or custom that led to an alleged violation of his right; rather, Plaintiff only mentioned one time that Defendants violated § 1983 in depriving Plaintiff of his employment without due process.  Plaintiff alleges that the policies and procedures under which the Defendants operated were violated by terminating Plaintiff without a hearing. (Doc. 13 at 3.)   However, Plaintiff does not allege that the City or a municipal officer acted pursuant to a City policy or long-standing custom, either formally or informally adopted, to commit the alleged constitutional violation—the deprivation of

Plaintiff's property interest in his employment without due process.  *See Monell*, 436 U.S. at 694-95 (where the alleged policy of the Department of Social Services and the Board of Education of the City of New York required pregnant employees to take unpaid leaves of absence before those leaves were required for medical reasons, the court held that the City could be liable under § 1983 because this involved official policy as the moving force of the alleged constitutional violation).  Thus, Plaintiff has failed to identify a policy or custom that would subject the City to § 1983 liability.

b)      Final Policymaker.[31]

According to the United States Supreme Court, a city may be liable under § 1983 for actions taken by a municipal official who "possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481; *see also Hill v. Clifton,* 74 F.3d 1150, 1152 (11th Cir. 1996)("Only those officials who have final policymaking authority may render the municipality liable under § 1983."); *Brown*, 923 F.2d at 1480 ("[A] municipal official who has 'final policymaking authority' in a certain

---

[31]The Court notes that neither Plaintiff nor Defendants have briefed the final policymaker route to municipal liability.

area of the city's business may by his or her action subject the government to § 1983 liability when the challenged action falls within that authority."). "'[S]tate and local positive law' determine whether a particular official has final policymaker authority for § 1983 purposes." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005); *see also Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 713 (11th Cir. 1992)("The determination of whether or not a particular official has " 'final policymaking authority' " is governed by state law, including valid local ordinances and regulations.*").   "[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. at 480.

Here, the City of Eutaw may be held liable for the actions of the individual defendants if state or local law assigns final policymaking authority to any such defendant to make the decision to terminate the Chief of Police.  In the Amended Complaint, Plaintiff alleges that an Ordinance of the City of Eutaw provides that the Chief of Police works at the pleasure of the mayor.[32]   (Doc. 13 ¶ 13(g)(3).)  This suggests that Mayor Steele had the

---

[32]Plaintiff alleges that when Plaintiff began his employment with the City of Eutaw Police Department, the City Ordinance stated that the Chief of Police worked at the pleasure of the Mayor and the City Council.  (Doc. 13 ¶ 13(c).)  If the Ordinance had not been

final policymaking authority with regard to the termination of the City's

Chief of Police as to subject the City of Eutaw to municipal liability if Mayor

Steele is found to have violated Plaintiff's rights by firing him.  *See Scala v.*

*City of Winter Park,* 116 F.3d 1396, 1403 n.5 (11th Cir. 1997)(stating that "if

Younger or Barrett had final (*i.e.*, nonreviewable) decision-making authority

with respect to termination decisions at the fire department, they would be

final policymakers in that subject area, and thus could subject the City to

liability if the decisions they made in that capacity were illegal ones");

*Brown,* 923 F.2d at 1480; *Williams v. City of Valdosta,* 689 F.2d 964, 969

(11th Cir.  1982)(holding that the City was subject to § 1983 claims for the

act of the City Manager for demoting plaintiff where the City manager was

vested with the final responsibility under a city ordinance for the demotion

of City employee).  While Plaintiff has not presented evidence of who, in

fact, had final policymaking authority regarding personnel decisions

concerning the Chief of Police, the Court need not determine who actually

---

revised, this *may* have led the Court to a different conclusion as to this issue because "[f]inal policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." *Quinn v. Monroe County,* 330 F.3d 1320, 1325 (11th Cir. 2003)(citations omitted).

has final policymaking authority, rather, the Court must only consider whether plaintiff has alleged sufficient facts to withstand the City's motion to dismiss. *See Brown*, 923 F.2d at 1480. Since Plaintiff has alleged that pursuant to a City Ordinance, the Mayor has the final decision as to whether to terminate the Chief of Police, the Plaintiff has left open the possibility of city liability based on the actions of a policymaker. Therefore, the City is properly the subject of a § 1983 suit by Plaintiff for his termination.

## ii.    Agency Theory.[33]

Defendants contend that Plaintiff has failed to state a claim against the City of Eutaw according to any employment or agency theory. (Doc. 29-2 at 11.) To support this contention, Defendants argue that they are not "employees" of the City of Eutaw; the City Council member Defendants are entitled to legislative immunity; all the Defendants are entitled to qualified immunity; and the Mayor and the City Council members are not agents but rather elected officials. However, Defendants do not provide any authority upon which they base this argument. Therefore, the Court deems this

---

[33]To the extent that Defendants rely on this argument as a basis for dismissal for claims other than the § 1983 claim, this analysis also applies.

argument waived.  *See U.S. Steel*, 495 F.3d at 1287 n.13 (where appellants provided no legal authority to support their argument nor any elaboration upon their argument, the court held that it need not address the "perfunctory and underdeveloped argument"); *Flanigan's Enters., Inc.*, 242 F.3d at 987 n.16 (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower*, 826 F.2d at 1576 (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

c.    Due Process.

Plaintiff contends that Defendants violated his right to due process by firing him without providing him specific reasons for termination and without providing him a hearing.[34] Defendants contend that any due process claim fails as a matter of law because Alabama has not refused to provide a sufficient post-deprivation remedy.[35]

---

[34]Plaintiff's allegation is procedural: Defendants failed to provide the elements of procedural due process, which include notice and a hearing.

[35]Plaintiff does not respond to this argument in his brief.  (Docs. 25 & 30.)

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV.  "There can be no doubt that, at a minimum, the Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government." *Grayden v. Rhodes,* 345 F.3d 1225, 1232 (11th Cir. 2003).

In the Eleventh Circuit, a § 1983 claim alleging a procedural due process violation requires proof of:  "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process."  *Grayden,* 345 F.3d at 1232 (citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)).  In this case, Defendants argue only that since Alabama has not refused a sufficient post-deprivation remedy, there is no constitutionally inadequate process. Therefore, the Court will assume, for purposes of this Opinion, the existence of a deprivation of a constitutionally protected property interest[36] and state

---

[36]The threshold inquiry in any § 1983 claim alleging a due process violation is whether the plaintiff even has a constitutionally protected interest. *See Economic Dev. Corp. of Dade County, Inc. v. Stierheim*, 782 F.2d 952, 953-54 (11th Cir. 1986)("In assessing a claim based on an alleged denial of procedural due process a court must first decide whether the complaining party has been deprived of a constitutionally protected liberty or

action.

"Due process is a flexible concept that varies with the particular situation." *Cryder*, 24 F.3d at 177. It "entitles an individual to notice and some form of hearing before state action" may deprive him of a property interest. *Id.* Generally, due process requires the deprivation of property to "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ.*, 470 U.S. at 542 (stating that the due process requirement requires "'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment")(citations omitted). However, a "state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the

_____

property interest. Absent such a deprivation, there can be no denial of due process."). In conducting this inquiry, the Court proceeds in recognition of the principle that protected property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Silva v. Bieluch*, 351 F.3d 1045, 1047 (11th Cir. 2003)(citations omitted). Personnel rules and regulations may create a property interest if they impose requirements or procedures regarding dismissals. *Brown*, 881 F.2d at 1026. The City's Personnel Rules and Regulations guarantee a hearing prior to termination. (Doc. 13 ¶ 12(a).) Under these circumstances, Plaintiff appears to have a property interest in continued employment. *See* Section IV(B)(2)(a)(iii) for a further discussion as to whether Plaintiff had a property interest in his employment in this case.

procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994); *see also Grayden,* 345 F.3d at 1232 (stating that it is "clear that the government must provide the requisite notice and opportunity for a hearing 'at a meaningful time and in a meaningful manner,'" however, the notice and hearing may take place after the deprivation in some circumstances); *Horton v. Bd of County Comm'rs of Flager County,*[37] 202 F.3d 1297, 1300 (11th Cir. 2000)(where the court stated that "the process a state provides is not only that employed by the board, agency, or other governmental entity whose action is in question, but also includes the remedial process state courts would provide if asked"); *see also Cotton v. Jackson*, 216 F.3d

---

[37]According to the Eleventh Circuit:

> [T]he *McKinney* rule looks to the existence of an opportunity-to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered. If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so. If state courts generally would not provide an adequate remedy for that type of procedural deprivation, then the federal court determines whether the Fourteenth Amendment Due Process Clause requires such a remedy, and if it does, the federal court remedies the violation. Either way, the federal court decides the federal procedural due process claim; that claim is not sent back to state court.

*Horton*, 202 F.3d at 1300.

1328, 1331-33 (11th Cir. 2000)(holding that the procedural due process claim was due to be dismissed even though plaintiff did not receive a pre-termination hearing because the state provided adequate post-termination remedies).

In this case, Plaintiff alleges that he was not given the reasons for his termination or a hearing prior to his termination.  (Doc. 13 ¶ 12.)  Since Plaintiff has alleged that he did not receive notice of the reasons for his termination or a hearing prior to his termination, Plaintiff has alleged a violation of the due process requirements.  Therefore, the Court must consider whether the state of Alabama provides a post-deprivation process by which Plaintiff could seek review of Defendants' alleged procedural violation as to cure the procedural deprivation.  "Alabama courts . . . review employment termination proceedings both to determine whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process." *Bell v. City of Demopolis, Ala.*, 86 F.3d 191, 192 (11th Cir. 1996)(citing *Ex Parte City of Tuskegee*, 447 So. 2d 713 (Ala.1984); *Guinn v. Eufaula*, 437 So.2d 516 (Ala.1983)); *see also Hicks v. Jackson County Comm'n*, 374 F. Supp. 2d 1084, 1092 (N.D. Ala. 2003)("Based

on this dual review, the Eleventh Circuit has previously held Alabama's writ of certiorari to be an adequate post-deprivation remedy for a procedural deprivation.").  Since the state of Alabama provides adequate means by which to remedy any alleged unlawful deprivation, Plaintiff's due process claim is not cognizable under federal law.  Thus, Defendants' motion to dismiss Plaintiff's § 1983 claim is due to be granted.

V.     Conclusion.

For the reasons stated above, Defendants' motions to dismiss (Docs. 14 & 29) are due to be denied in part and granted in part.  A separate order in conformity with this opinion will be entered.

Done this 14th day of August 2008.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671